Filippo Marchino, Esq. (SBN 256011)
fm@xlawx.com
Carlos X. Colorado, Esq. (SBN 231031)
cc@xlawx.com
Thomas E. Gray, Esq. (SBN 299898)
tg@xlawx.com
**THE X-LAW GROUP, P.C.**
625 Fair Oaks Ave, Suite 390
South Pasadena, CA 91030
Tel: (213) 599-3380

Lawrence J. Conlan, Esq. (SBN 221350)
ljc@presidiofirm.com
Travis C. Logue, Esq. (SBN 232471)
tcl@presidiofirm.com
Mandy D. Moua, Esq. (SBN 354959)
mdm@presidiofirm.com
**PRESIDIO LAW FIRM LLP**
150 E Carrillo St
Santa Barbara, CA 93101
Tel: (805) 399-3222

Attorneys for Plaintiffs Duane Page
and Michelle Carlisle, Individually
and on Behalf of All Others Similarly Situated

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DUANE PAGE and MICHELLE CARLISLE Individually And on Behalf of All Others Similarly Situated <br><br> Plaintiffs, <br> v. <br><br> GKN AEROSPACE TRANSPARENCY SYSTEMS INC., a California Corporation, GKN AEROSPACE SERVICES LTD., a United Kingdom Private Limited Company, and MELROSE INDUSTRIES PLC, a United Kingdom Public Company <br><br> Defendants. | CASE NO: 8:26-cv-01293 <br><br> **CLASS ACTION COMPLAINT** <br><br> 1. NEGLIGENCE <br> 2. TRESPASS <br> 3. PRIVATE NUISANCE <br> 4. PUBLIC NUISANCE <br> 5. STRICT LIABILITY FOR ULTRAHAZARDOUS ACTIVITY <br> 6. TRESPASS TO CHATTELS / CONVERSION <br><br> **JURY TRIAL DEMANDED** |

CLASS ACTION COMPLAINT

## INTRODUCTION

1. Plaintiffs Duane Page ("Page") and Michelle Carlisle ("Carlisle") bring this action against Defendants GKN AEROSPACE TRANSPARENCY SYSTEMS INC., a California Corporation (hereinafter "GATS"), GKN AEROSPACE SERVICES LTD., a United Kingdom Private Limited Company (hereinafter "GAS"), and MELROSE INDUSTRIES PLC, a United Kingdom Public Company (hereinafter "MIP" and, collectively with GATS and GAS, the "GKN Defendants") collectively arising from the negligent storage, containment, handling, monitoring, and release of methyl methacrylate ("MMA") and related hazardous chemical vapors from Defendants' facility located at 12122 Western Ave., Garden Grove, California.

2. As a result of the MMA release and resulting toxic plume, surrounding residents and property owners, including Plaintiffs and members of the proposed Class, were subjected to evacuation orders, shelter-in-place directives, exposure concerns, noxious chemical odors, fear of contamination, interference with the use and enjoyment of their homes and properties, and other damages.

## PARTIES

3. Plaintiff Duane Page is, together with his wife Michelle Carlisle, the owner of a house in Orange County, California. He is a citizen of the State of California.

4. Plaintiff Michelle Carlisle is, together with her husband Duane Page, the owner of a house in Orange County, California. She is a citizen of the State of California.

5. Defendant GKN AEROSPACE TRANSPARENCY SYSTEMS INC., is a California Corporation with its principal place of business at 12122 Western Ave Garden Grove, CA.

6. Defendant GKN AEROSPACE SERVICES LTD., is a United Kingdom

1

**CLASS ACTION COMPLAINT**

Private Limited Company, with its principal place of business at 1301 Solana Boulevard, Suite 1528, Westlake, Texas 76262.

7. Defendant MELROSE INDUSTRIES PLC, is a United Kingdom Public Company, with its principal place of business at 1301 Solana Boulevard, Suite 1528, Westlake, Texas 76262.

8. Defendant GKN Aerospace Transparency Systems Inc. is a wholly owned United States subsidiary and operating business within the broader GKN Aerospace group, which is headquartered in the United Kingdom and operates globally through Defendant GKN Aerospace Ltd.

9. Defendant GKN Aerospace Transparency Systems Inc specializes in the design and manufacture of aerospace transparency products, including aircraft windows, cockpit windshields, and military canopies, and functions as part of GKN Aerospace's "transparencies" business line.

10. Public corporate records and industry databases identify Defendant GKN Aerospace Transparency Systems Inc as an affiliated subsidiary operating under Defendant GKN Aerospace Ltd's "GKN Aerospace" brand and corporate structure.

11. Defendant GKN Aerospace Ltd itself is wholly owned by Defendant Melrose Industries plc, a UK-based aerospace and engineering group.

12. Defendant GKN Aerospace oversees global operations involving airframe systems, transparencies, engine structures, and related aerospace technologies, with facilities in multiple countries, including the United States.

13. Defendant GKN Aerospace Transparency Systems Inc., is a wholly owned subsidiary of Defendants GKN Aerospace Ltd.

14. Defendant GKN Aerospace Ltd is a wholly owned subsidiary of Defendants Melrose Industries PLC.

15. At all relevant times, Defendants GKN Aerospace Services Ltd. and Melrose Industries plc exercised centralized oversight, management, direction, and control over hazardous materials policies, operational safety protocols,

2

CLASS ACTION COMPLAINT

environmental compliance procedures, risk management practices, industrial safety systems, and corporate governance affecting the operations of Defendant GKN Aerospace Transparency Systems Inc., including the handling, storage, containment, monitoring, maintenance, and management of methyl methacrylate ("MMA") and other hazardous industrial chemicals at the Garden Grove facility. Plaintiffs are informed and believe, and thereon allege, that such policies, procedures, operational standards, and safety practices were implemented, coordinated, directed, approved, monitored, and/or enforced on a centralized and enterprise-wide basis by the GKN Defendants.

## JURISDICTION AND VENUE

16. This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005 and 28 U.S.C. § 1332 because there are over 100 members of the proposed class, at least one member of the proposed class has a different citizenship from a defendant, and the total matter in controversy exceeds $5,000,000.

17. Venue is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district and because Defendant is subject to the Court's personal jurisdiction in this judicial district.

## FACTUAL ALLEGATIONS

### I. The Storage Of Methyl Methacrylate

18. Defendants own and operate an aerospace manufacturing and/or industrial facility located at 12122 Western Ave., Garden Grove, California.

19. At all relevant times, Defendants stored, handled, maintained, utilized, transported, processed, controlled, and/or otherwise managed Methyl Methacrylate (MMA) and other hazardous substances at the facility.

3

20. Methyl Methacrylate (MMA) is a highly flammable, clear organic liquid with an acrid, fruity odor. Primarily used as a monomer to manufacture acrylic plastics like Plexiglas, it is also essential for producing latex paints, medical bone cement, dental crowns, and high-strength adhesives.

21. Defendant GKN Aerospace Transparency Systems Inc. uses MMA primarily to manufacture aerospace-grade acrylic plastics and transparent aircraft components such as aircraft windows, cockpit windshields, military jet canopies, passenger cabin windows and other "transparency systems" for aerospace applications.

22. Additionally, MMA is the key chemical building block used to make polymethyl methacrylate (PMMA), commonly known as acrylic or plexiglass. In aerospace, PMMA is valued because it is lightweight, optically clear, impact resistant, and easier to shape than glass.

23. GKN Aerospace's own transparency systems division describes its business as producing cockpit windows, passenger cabin windows, military canopies (including F-35 and F-22 systems), abrasion-resistant coated aerospace transparencies, and notes that it has a "vertically integrated supply of aerospace grade acrylic material."

24. MMA is a hazardous, volatile, highly flammable industrial chemical that presents substantial risks to human health, property, animals, and the environment when improperly stored, released, or aerosolized. MMA readily vaporizes at room temperature, producing highly concentrated airborne vapors that are heavier than air and capable of settling, pooling, and migrating into low-lying areas, structures, residences, and surrounding communities. Because MMA vapors can travel beyond the point of release and accumulate in confined or poorly ventilated spaces, accidental releases create widespread and foreseeable dangers to nearby persons and property.

25. MMA is also highly lipid-soluble, meaning it readily penetrates human

4

**CLASS ACTION COMPLAINT**

skin and can pass through surgical gloves and standard protective clothing. As a result, ordinary protective barriers are often insufficient to prevent chemical exposure. MMA's chemical properties make it particularly dangerous in industrial and populated settings because individuals may unknowingly experience dermal and inhalation exposure even without direct contact with liquid MMA.

26. In addition, MMA is extremely flammable and chemically reactive. In the event of a fire, ignition, or explosion, MMA creates severe physical hazards and may generate a complex mixture of toxic and volatile airborne contaminants. The release of MMA therefore presents not only chemical exposure dangers, but also substantial risks of combustion, explosion, toxic smoke generation, and catastrophic harm to surrounding persons and properties.

27. Exposure to MMA vapors poses serious health hazards to humans. Inhalation exposure attacks mucous membranes and commonly causes burning eyes, throat irritation, coughing, chest tightness, respiratory distress, and shortness of breath. Prolonged or concentrated inhalation exposure can result in pulmonary edema, a life-threatening accumulation of fluid within the lungs that severely impairs breathing and oxygen exchange.

28. Direct contact with MMA may also cause significant dermatological injuries. MMA strips the skin of natural oils and can cause severe irritation, chemical burns, and contact dermatitis. Repeated exposure may lead to sensitization, meaning that once an individual becomes sensitized to MMA, even minimal future exposure may trigger severe itching, rashes, inflammation, and other allergic reactions.

29. MMA additionally poses substantial neurological dangers because it affects the central nervous system. Overexposure to MMA has been associated with dizziness, nausea, headaches, confusion, cognitive impairment, toxic dementia, numbness, weakness in the extremities, and generalized peripheral neuropathy. Chronic or repeated exposure may therefore result in long-term neurological impairment and diminished quality of life.

5

**CLASS ACTION COMPLAINT**

30.   Repeated or chronic MMA exposure may also cause respiratory sensitization and permanent respiratory injury. Individuals exposed to MMA over time may develop occupational asthma, chronic respiratory irritation, reduced lung capacity, and heightened sensitivity to airborne chemical exposures.

31.   MMA exposure also presents serious hazards to animals. Studies involving animal exposure have demonstrated acute respiratory toxicity, including lung damage and progressive degeneration or necrosis of olfactory tissue responsible for processing smell. Animal studies have further demonstrated developmental and reproductive toxicity associated with MMA exposure, including reduced fetal weight, skeletal and vertebral abnormalities, developmental defects, and increased fetal deaths in exposed populations.

32.   Because of these dangerous characteristics, MMA requires strict storage, containment, monitoring, handling, ventilation, emergency response planning, and safety controls to prevent releases capable of endangering nearby residents, workers, animals, and surrounding communities.

33.   On or about May 21, 2026, a hazardous materials emergency occurred at Defendants' GKN Aerospace facility located at 12122 Western Avenue in Garden Grove, California, after a large industrial storage tank containing methyl methacrylate began experiencing dangerous thermal instability and uncontrolled chemical reactions.

34.   Upon information and belief, the tank became overheated and entered a condition that created a substantial risk of rupture, explosion, fire, and the uncontrolled release of hazardous airborne chemicals into surrounding communities.

35.   MMA is an extremely volatile, flammable, and reactive industrial chemical that poses severe risks when improperly stored or subjected to elevated temperatures or pressure conditions. As the incident escalated, emergency responders determined that the storage tank posed an imminent threat to public

6

**CLASS ACTION COMPLAINT**

safety because it could catastrophically fail, ignite, explode, or release large quantities of toxic chemical vapors into densely populated residential neighborhoods surrounding the facility.

36. As the emergency unfolded, hazardous chemical vapors and noxious odors spread beyond the boundaries of the GKN facility and into neighboring residential communities. Because MMA vapors are heavier than air, the toxic plume posed a heightened risk of migrating into streets, homes, low-lying areas, structures, and occupied residential properties. Residents in surrounding areas reported strong chemical odors, burning sensations, respiratory irritation, headaches, dizziness, and fear regarding potential toxic exposure and contamination.

37. Upon information and belief, MMA vapors, particulates, residues, contaminants, and/or airborne chemical byproducts physically migrated onto and into Plaintiffs' and Class members' real and personal property, including structures, HVAC systems, outdoor surfaces, vegetation, soil, and personal belongings.

38. Plaintiffs are informed and believe that MMA vapors and airborne contaminants infiltrated residences and enclosed structures throughout the evacuation zone.

39. In response to the escalating danger, multiple emergency response agencies, including the Orange County Fire Authority, hazardous materials response teams, law enforcement agencies, and emergency management personnel, responded to the scene and implemented large-scale emergency measures designed to protect nearby residents and the public.

40. Emergency officials issued evacuation orders and shelter-in-place directives affecting broad portions of Garden Grove and neighboring communities, including Stanton, Cypress, Anaheim, Buena Park, and Westminster. Authorities closed roads, restricted access to residential neighborhoods, established emergency perimeters, and warned residents of the continuing risk of toxic exposure, fire, explosion, and environmental contamination.

7

**CLASS ACTION COMPLAINT**

41. Public officials acknowledged that the situation remained unstable and unpredictable for an extended period of time. Emergency responders publicly warned that the MMA storage tank could rupture or explode "at any moment," thereby placing nearby residents, occupants, businesses, schools, and properties at continuing risk of catastrophic harm.

42. Authorities further warned that any ignition event or structural failure involving the tank could release a massive volume of hazardous and toxic airborne contaminants into the surrounding environment.

43. Ultimately, approximately 40,000 residents were ordered to evacuate or otherwise affected by emergency directives associated with the incident.

44. Class Plaintiffs (who reside less than 0.4 miles from the GKN Defendants facility) and members of the proposed Class were among those forced to evacuate, shelter in place, refrain from occupying their homes, or otherwise alter their use and enjoyment of their properties due to the dangerous conditions created by the GKN Defendants' facility and hazardous chemical release.

45. As a direct and proximate result of the GKN Defendants' conduct and the MMA release, Plaintiffs and members of the proposed Class suffered substantial interference with the use, occupancy, comfort, enjoyment, and possession of their homes and properties. Plaintiffs and Class members were displaced from their residences, forced to incur evacuation-related expenses, deprived of the safe use of their homes, and subjected to fear, anxiety, annoyance, inconvenience, and distress arising from the threat of toxic exposure and catastrophic chemical storage failure.

46. The MMA release and resulting emergency conditions further caused widespread concern regarding contamination of homes, personal property, outdoor surfaces, pets, vegetation, soil, and the surrounding environment. Plaintiffs and members of the proposed Class reasonably feared both immediate and long-term health consequences associated with exposure to MMA vapors and airborne contaminants.

8

**CLASS ACTION COMPLAINT**

47.  Plaintiffs are informed and believe, and thereon allege, that the dangerous conditions giving rise to the incident were foreseeable and preventable, and resulted from the GKN Defendants' negligent storage, maintenance, monitoring, containment, inspection, handling, supervision, and control of MMA and hazardous industrial chemicals at the facility.

48.  Plaintiffs are informed and believe, and thereon allege, that hazardous conditions, contamination risks, vapor migration concerns, and environmental impacts associated with the MMA incident may continue to affect Plaintiffs' and Class members' properties and surrounding communities unless and until proper remediation, inspection, containment, monitoring, and environmental response measures are completed.

## II.   Property Owners And Residents Incur Substantial Damages.

49.  As a result of the GKN Defendants negligence, tens of thousands of properties have become impacted by the release, and will continue, for the foreseeable future, to be impacted.

50.  At present, Plaintiffs primarily seek damages arising from property damage, evacuation-related harm, nuisance conditions, displacement, and interference with the use and enjoyment of property. Plaintiffs expressly reserve all rights and remedies relating to latent injuries, future toxic exposure claims and medical monitoring relief to the extent permitted by applicable law.

51.  The presence of MMA has caused harm to the property owners and residents for a number of reasons.

52.  First, the affected properties need to be properly cleaned to remove the notoriously harsh, pungent, "fruity" odor of MMA that easily embeds itself into porous materials like woods, fabrics, carpets, and drywall.

53.  Second,  MMA is a strong organic solvent and easily dissolves, softens or degrades many common plastics and rubbers including natural rubber, ABS, and

9

polycarbonate. It can also permanently cloud or craze acrylic glass surfaces and is highly reactive with and corrosive to carbon steel, cast iron, and ductile iron.   This means that many items exposed to the MMA will need to be properly cleaned and/or replaced.

54.   Third, MMA is highly toxic and destructive to plants. Many property owners, occupants, and tenants have outdoor plants and gardens vulnerable to MMA.

55.   Last, the land and the properties themselves need to be properly cleaned in order to prevent the further contamination of land, waterways, and the general environment.

### III.   The Class Representatives.

56.   Class Plaintiffs Duane Page and Michelle Carlisle are the owners and residents of a house in Orange County, California that is approximately 0.4 miles away from the GKN Defendants' facility. Like other property owners, occupants, and tenants whose properties are in the evacuation zone, Plaintiffs have incurred damages, including, but not limited to, the cost of alternate housing, the cost required to restore their property and residence to the state it was prior to being affected by the MMA release.  Like other class members, their home has become temporarily unsafe, unusable, and/or unsuitable for normal residential occupancy.

57.   Class Plaintiffs have been evacuated since May 22, 2026.

### CLASS ACTION ALLEGATIONS

58.   Plaintiffs bring this action on their own behalf, and as a class action on behalf of the Class defined herein, pursuant to, and properly maintainable under Fed. R. Civ. P. 23(a) and Fed. R. Civ. P. 23(b)(3).  The Class is also maintainable under Fed. R. Civ. P. 23(c)(4) on the issue of liability.  The Class consists of thousands of property owners whose properties were affected by the MMA risk created by the

10

**CLASS ACTION COMPLAINT**

GKN Defendants.  Specifically, Plaintiffs bring this suit on behalf of the following Class:

The "**PROPERTY DAMAGE CLASS**":  All persons who own, rent, or reside in real property within the containment area, as defined by the evacuation area determined by the primarily the Orange County Fire Authority (OCFA), on May 22, 2026.  The class excludes counsel representing the class and all persons employed by said counsel, governmental entities, GKN Aerospace Transparency Systems Inc., GKN Aerospace Services Ltd., and Melrose Industries Plc, its officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns, any judicial officer presiding over this matter, the members of their immediate families and judicial staff, any individual having filed a personal injury claim against GKN Aerospace Transparency Systems Inc., GKN Aerospace Services Ltd., and Melrose Industries Plc arising out of the same incident and any other individual whose interests are antagonistic to other class members.

59.    Plaintiffs shall serve as class representatives of the Property Damage Class.

60.    The GKN Defendants subjected Plaintiffs and the Class to the same wrongdoing and harmed them in the same manner. Now, Plaintiffs and the Class seek to enforce the same rights and remedies pursuant to the same legal theories: negligence, private nuisance, and trespass.

61.    Numerosity: The proposed class and subclass are so numerous that individual joinder of all their members is impracticable. While the exact number and identities of the Class Members are unknown at this time, such information can be ascertained through appropriate investigation and discovery. It is estimated that the "Property Damage Class" consists of tens of thousands of members. The disposition of the claims of these Class Members in a single class action will provide substantial benefits to all parties and to the Court.

62.    Typicality: Plaintiffs' claims are typical of the claims of the Class in that their claims arise from the same event or practice or course of conduct that gives rise to the claims of other class members and is based on the same legal theory as their claims.

**CLASS ACTION COMPLAINT**

63. Adequacy of Representation: Plaintiffs will fairly and adequately represent and protect the interests of the Class. Plaintiffs have further retained the undersigned counsel, who have substantial experience in prosecuting complex lawsuits and class action litigation. Plaintiffs and undersigned counsel are committed to vigorously prosecuting this action on behalf of the Class and have the financial resources to do so. Neither Plaintiffs nor their counsel have any interests adverse to the Class.

64. Superiority of Class Action and Impracticability of Individual Actions: Plaintiffs and the members of the Class suffered harm as a result of Defendant's unlawful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Individual joinder of all members of the Class is impractical. Even if individual Class Members had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed. Individual litigation magnifies the delay and expense to all parties in the court system of resolving the controversies engendered by the Defendant's common course of conduct. The class action device allows a single court to provide the benefits of unitary adjudication, judicial economy, and the fair and equitable handling of all Class Members' claims in a single forum. The conduct of this action as a class action conserves the resources of the parties and of the judicial system and protects the rights of the Class Members. Adjudication of individual Class Members' claims with respect to Defendant would, as a practical matter, be dispositive of the interests of other members not parties to the adjudication and could substantially impair or impede the ability of other Class Members to protect their interests.

65. Common Questions of Law and Fact Predominate: In addition, the requirements of Federal Rule of Civil Procedure 23 are satisfied by questions of law and fact common to the claims of Plaintiffs and of each member of the Property Damage Class and which predominate over any question of law or fact affecting

**CLASS ACTION COMPLAINT**

only individual members of the Property Damage Class. Common questions of law and fact include, but are not limited to, the following:

1. Prior to May 22, 2026, were Defendants negligent in their storage of MMA?

2. Did MMA stored and under the control of Defendants escape their control?

3. Does having one's property reached by MMA interfere with the free use or enjoyment of one's property?

4. Did Plaintiffs and the Class give Defendants permission to release MMA on their properties?

5. Did Defendants commit trespass?

6. Did Defendants commit private nuisance?

7. Did Defendants convert Plaintiffs' property?

8. Are Plaintiffs and the Class entitled to compensatory damages?

9. Are Plaintiffs and the Class entitled to nominal damages?

10. Are Plaintiffs and the Class entitled to punitive damages?

11. Are Plaintiffs and the Class entitled to an award of attorneys' fees?

66. <u>Notice</u>: Notice can be provided via internet publication, published notice and/or through mail and paid for by the Defendants.

### FIRST CLAIM FOR RELIEF
### NEGLIGENCE

67. The allegations of paragraphs 1 through 57 are re-alleged and incorporated herein by reference, and Plaintiffs allege as follows a cause of action on behalf of themselves and the class of similarly situated Property Damage Class members.

68. Defendants owed Plaintiffs and members of the proposed Class a duty to

13

**CLASS ACTION COMPLAINT**

exercise reasonable care in the ownership, operation, maintenance, storage, containment, monitoring, supervision, inspection, handling, and control of MMA and other hazardous industrial chemicals maintained at the GKN facility located at 12122 Western Avenue in Garden Grove, California.

69. Defendants further owed a duty to design, implement, maintain, and enforce adequate safety procedures, emergency response protocols, inspection systems, containment measures, warning systems, ventilation systems, cooling systems, and operational safeguards sufficient to prevent the release, overheating, ignition, migration, or uncontrolled discharge of hazardous chemical substances into neighboring communities.

70. Defendants knew or reasonably should have known that MMA is an extremely volatile, flammable, reactive, and toxic chemical substance capable of causing catastrophic harm if improperly stored, maintained, monitored, or contained.

71. Defendants further knew or should have known that any release, overheating event, containment failure, or uncontrolled chemical reaction involving MMA could foreseeably result in airborne toxic vapor migration, fire, explosion, environmental contamination, mandatory evacuations, respiratory exposure, and widespread harm to nearby residents and properties. Despite such knowledge, Defendants failed to exercise reasonable care in the management and control of the hazardous substances maintained at the facility.

72. Defendants breached their duties of care by, among other things, negligently storing MMA in dangerous conditions; failing to properly inspect and maintain storage systems and equipment; failing to implement adequate temperature monitoring, pressure monitoring, cooling, containment, and emergency mitigation systems; failing to properly supervise hazardous chemical operations; failing to adequately train personnel responsible for the handling and maintenance of MMA; failing to implement proper emergency procedures; failing to timely warn

14

**CLASS ACTION COMPLAINT**

surrounding residents and governmental agencies of dangerous conditions; and otherwise failing to prevent the hazardous conditions and chemical emergency described herein.

73. Defendants further breached their duties by maintaining substantial quantities of hazardous industrial chemicals in close proximity to densely populated residential communities without adequate safeguards sufficient to protect neighboring residents and properties from foreseeable chemical releases, toxic vapor migration, evacuation conditions, and catastrophic industrial failures. Plaintiffs are informed and believe that Defendants prioritized operational convenience, production concerns, cost savings, and/or profit over the implementation of adequate industrial safety measures necessary to protect the public.

74. As a direct and proximate result of Defendants' negligent acts and omissions, MMA and hazardous chemical vapors were released into the surrounding environment, creating dangerous emergency conditions that caused governmental evacuation orders, shelter-in-place directives, road closures, public safety warnings, and substantial interference with the use and enjoyment of nearby homes and properties.

75. Plaintiffs and members of the proposed Class were forced to evacuate, refrain from occupying their residences, alter their daily activities, incur displacement-related expenses, and endure fear, anxiety, inconvenience, annoyance, contamination concerns, and other damages arising from the hazardous conditions created by Defendants.

76. The injuries and damages suffered by Plaintiffs and the proposed Class were foreseeable consequences of Defendants' negligent conduct. Defendants knew or reasonably should have known that the negligent storage, handling, maintenance, containment, and supervision of MMA created an unreasonable risk of catastrophic chemical failure and substantial harm to neighboring communities. Nevertheless,

15

**CLASS ACTION COMPLAINT**

Defendants failed to take reasonable precautions necessary to prevent the MMA emergency and resulting injuries and damages suffered by Plaintiffs and the proposed Class.

## SECOND CLAIM FOR RELIEF
### TRESPASS

77. The allegations of paragraphs 1 through 57 are re-alleged and incorporated herein by reference, and Plaintiffs allege as follows a cause of action on behalf of themselves and the class of similarly situated Property Damage Class members.

78. Plaintiffs and the Class are owners, occupants, and/or tenants of real property.

79. The GKN Defendants caused MMA to be released near the real properties of Plaintiffs and the Class, which in turn caused the MMA to travel to the properties of Plaintiffs and the Class.

80. Plaintiffs and the Class did not give the GKN Defendants permission to cause MMA to enter their properties.

81. As a result of the GKN Defendants' conduct, Plaintiffs and the Class have suffered damages.

82. The GKN Defendants acted with a conscious disregard of the rights of others and put their own financial interests ahead of the interests of Plaintiffs and the Class, which constitutes malice.

83. The GKN Defendants engaged in despicable conduct that subjected Plaintiffs and the Class to cruel and unjust hardship in conscious disregard of their rights, which constitutes oppression.

84. Therefore, the GKN Defendants acted with oppression and/or malice and Plaintiffs and the Class are therefore entitled to punitive damages in an amount according to proof at trial.

16

**CLASS ACTION COMPLAINT**

## THIRD CLAIM FOR RELIEF

### PRIVATE NUISANCE

85. The allegations of paragraphs 1 through 57 are re-alleged and incorporated herein by reference, and Plaintiffs allege as follows a cause of action on behalf of themselves and the class of similarly situated Property Damage Class members.

86. Plaintiffs and the Class are owners, occupants, and/or tenants of real property.

87. In releasing MMA near the real properties Plaintiffs and the Class owned, occupied, and/or resided in, the GKN Defendants created a condition that is an obstruction to the free use of the properties, so as to interfere with the comfortable enjoyment of the properties.

88. The MMA has interfered with the use or enjoyment of the properties by Plaintiffs and the Class.

89. Plaintiffs and the Class did not consent to the GKN Defendants' conduct.

90. The seriousness of the harm outweighs the public benefit of the GKN Defendants' conduct.

91. An ordinary person would be reasonably annoyed or disturbed by the GKN Defendants' conduct.

92. As a result of the GKN Defendants' conduct, Plaintiffs and the Class have suffered damages.

93. The GKN Defendants acted with a conscious disregard of the rights of others and put their own financial interests ahead of the interests of Plaintiffs and the Class, which constitutes malice.

94. The GKN Defendants engaged in despicable conduct that subjected Plaintiffs and the Class to cruel and unjust hardship in conscious disregard of their rights, which constitutes oppression.

95. Therefore, the GKN Defendants acted with oppression and/or malice and

17

Plaintiffs and the Class are therefore entitled to punitive damages in an amount according to proof at trial.

## FOURTH CLAIM FOR RELIEF
## PUBLIC NUISANCE

96. The allegations of paragraphs 1 through 57 are re-alleged and incorporated herein by reference, and Plaintiffs allege as follows a cause of action on behalf of themselves and the class of similarly situated Property Damage Class members.

97. At all relevant times, Defendants owned, operated, controlled, maintained, supervised, managed, and/or were otherwise responsible for the GKN Aerospace facility located at 12122 Western Avenue in Garden Grove, California, including the storage, handling, containment, maintenance, monitoring, and control of methyl methacrylate ("MMA") and related hazardous industrial chemicals.

98. Defendants' acts and omissions, including the negligent storage, containment, maintenance, monitoring, supervision, and control of MMA, created dangerous conditions that substantially and unreasonably interfered with rights common to the general public, including public health, public safety, public peace, public comfort, public convenience, and the safe use of public and private property throughout the surrounding communities.

99. The hazardous conditions created by Defendants resulted in widespread emergency response measures, including evacuation orders, shelter-in-place directives, road closures, emergency perimeters, hazardous materials response operations, public safety warnings, and substantial disruption to residential neighborhoods and surrounding communities in Garden Grove, Stanton, Cypress, Anaheim, Buena Park, Westminster, and nearby areas.

100. Defendants' conduct created a substantial and continuing risk of fire, explosion, toxic vapor migration, environmental contamination, airborne chemical

18

exposure, and catastrophic harm affecting tens of thousands of residents, businesses, schools, roadways, public infrastructure, and properties located near the facility.

101. The interference caused by Defendants was substantial, unreasonable, offensive, and harmful to the public, and would be highly offensive to an ordinary reasonable person.

102. Plaintiffs and members of the proposed Class suffered injuries and damages different in kind from those suffered by the general public because Plaintiffs and Class members resided within or near the evacuation and impact zones, were forced to evacuate or shelter in place, suffered direct interference with the use and enjoyment of their homes and properties, incurred displacement-related expenses, and experienced heightened contamination concerns, fear, annoyance, inconvenience, and property-related damages.

103. As a direct and proximate result of Defendants' conduct and the public nuisance created thereby, Plaintiffs and members of the proposed Class suffered damages including, but not limited to, loss of use and enjoyment of property, evacuation-related damages, displacement costs, diminution in value, nuisance damages, emotional distress, annoyance, inconvenience, remediation-related damages, and other economic and non-economic harm.

104. Defendants acted with conscious disregard for the rights, safety, and well-being of Plaintiffs, the Class, and the surrounding public, thereby entitling Plaintiffs and the Class to punitive damages according to proof at trial.

**FIFTH CLAIM FOR RELIEF**

**STRICT LIABILITY FOR ULTRAHAZARDOUS ACTIVITY**

105. The allegations of paragraphs 1 through 57 are re-alleged and incorporated herein by reference, and Plaintiffs allege as follows a cause of action on behalf of themselves and the class of similarly situated Property Damage Class members.

CLASS ACTION COMPLAINT

106. The GKN Defendants' storage, handling, containment, maintenance, processing, monitoring, and control of large quantities of methyl methacrylate ("MMA") and related hazardous industrial chemicals constituted ultrahazardous and/or abnormally dangerous activities. MMA is an inherently volatile, flammable, reactive, and toxic chemical substance that presents a substantial risk of catastrophic harm to persons, property, animals, and the environment when released, overheated, improperly contained, or otherwise uncontrolled. The dangers associated with MMA include fire, explosion, toxic vapor migration, airborne contamination, respiratory injury, chemical exposure, environmental contamination, and mass evacuation events affecting surrounding communities.

107. The risks associated with the storage and management of MMA are extraordinary and extend far beyond those ordinarily associated with routine industrial operations. Because MMA vapors readily aerosolize, migrate through the air, and accumulate in populated and low-lying areas, any loss of containment creates a substantial and foreseeable danger to neighboring residences, occupants, businesses, schools, and the public at large. Moreover, MMA's highly flammable and reactive nature creates a continuing risk of catastrophic ignition, combustion, explosion, and uncontrolled toxic release capable of causing widespread property damage, physical injury, contamination, displacement, and environmental harm.

108. The ultrahazardous nature of the GKN Defendants' activities is further demonstrated by the fact that the risks posed by large-scale MMA storage and handling cannot be entirely eliminated through the exercise of reasonable care. Even where precautions are undertaken, the storage of substantial quantities of volatile industrial chemicals in close proximity to residential communities necessarily creates a high degree of risk of serious harm in the event of equipment failure, overheating, containment failure, human error, chemical instability, mechanical malfunction, fire, or other operational failure. The magnitude of potential harm associated with an MMA release—including toxic airborne plume migration,

20

**CLASS ACTION COMPLAINT**

mandatory evacuations, exposure to hazardous vapors, and the threat of catastrophic explosion—renders such activities abnormally dangerous as a matter of law.

109. At all relevant times, the GKN Defendants engaged in, authorized, controlled, supervised, and/or benefited from such ultrahazardous activities at the GKN facility located at 12122 Western Avenue in Garden Grove, California. The GKN Defendants knew or should have known that the storage and handling of MMA in substantial quantities created a foreseeable and unreasonable risk of catastrophic harm to nearby residents and properties, particularly given the facility's proximity to densely populated residential communities.

110. As a direct and proximate result of the GKN Defendants' ultrahazardous activities, MMA and hazardous vapors were released from the facility into the surrounding environment, creating emergency conditions that resulted in evacuation orders, shelter-in-place directives, widespread fear of toxic exposure, interference with the use and enjoyment of residential properties, contamination concerns, and other damages suffered by Plaintiffs and members of the proposed Class.

111. Because the GKN Defendants engaged in ultrahazardous and abnormally dangerous activities, the GKN Defendants are strictly liable for all injuries, damages, losses, interference with property rights, evacuation-related harm, nuisance conditions, contamination-related damages, diminution in value, emotional distress, and other injuries proximately resulting from the MMA release and related hazardous conditions, regardless of the degree of care exercised by the GKN Defendants.

### SIXTH CLAIM FOR RELIEF

### TRESPASS TO CHATTELS (CONVERSION)

112. The allegations of paragraphs 1 through 57 are re-alleged and incorporated herein by reference, and Plaintiffs allege as follows a cause of action on behalf of themselves and the class of similarly situated Property Damage Class members.

21

**CLASS ACTION COMPLAINT**

113. At all times relevant to this Complaint, Plaintiffs and the Class had and continue to have actual and constructive possession, and the immediate right to possession, of personal property.

114. The GKN Defendants' improper storage of MMA, as described herein, near Plaintiffs' and the Class' personal property has caused an intrusion upon, changes to, damage to, and destruction of Plaintiffs' and the Class' property interest therein, and has deprived Plaintiffs and the Class of the possession, control, and use of their property interests.

115. Such dominion and control by the GKN Defendants' has and continues to wrongfully interfere with Plaintiffs' and the Class' rights of ownership of the personal property so as to constitute conversion of Plaintiffs' and the Class' property interest in their personal property.

116. As a direct and proximate result of the GKN Defendants' exercise of dominion and control over Plaintiffs' and the Class' personal property, Plaintiffs and the Class have suffered all of the injuries and damages described herein. The GKN Defendants' are liable for all such damage and punitive damages as set forth herein.

117. The aforementioned acts of the GKN Defendants' were willful, wanton, malicious, and oppressive, were taken with intent to interfere with or in reckless disregard to Plaintiffs' and the Class' property rights, and justify the awarding of exemplary and punitive damages.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment against the GKN Defendants as follows on behalf of themselves and the Class:

Plaintiffs seek to recover the following damages and obtain the following relief from the GKN Defendants:

(a)  Remediation damages;

22

**CLASS ACTION COMPLAINT**

(b)  Loss of use damages;

(c)  Diminution in value damages;

(d)  Evacuation/displacement damages;

(e)  Nuisance damages;

(f)  Any other compensatory damages suffered by Plaintiffs and the Class;

(g)  Punitive damages;

(h)  All reasonable and necessary attorneys' fees;

(i)  Court costs;

(j)  Pre and post-judgment interest;

(k)  And such other relief to which Plaintiffs and the Class may show themselves justly entitled.

DATED: May 23, 2026                    **THE X-LAW GROUP, P.C.**

By:_____
FILIPPO MARCHINO, ESQ.,
Attorneys for Plaintiffs

In association with
**PRESIDIO LAW FIRM LLP**
LAWRENCE J. CONLAN, ESQ.,

23

**CLASS ACTION COMPLAINT**

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues so triable.

DATED: May 23, 2026                    **THE X-LAW GROUP, P.C.**

By:_____
FILIPPO MARCHINO, ESQ.,
Attorneys for Plaintiffs

In association with
**PRESIDIO LAW FIRM LLP**
LAWRENCE J. CONLAN, ESQ.,

24
**CLASS ACTION COMPLAINT**